JANVIER, Judge.
At about 9:30 o’clock, on the night of March 16th, 1949, Mrs. Catherine Leon, wife of Clovis Hingle, fell as she was walking across Elysian Fields Avenue, at the Royal Street intersection. She sustained serious injuries and this suit is the result. She is joined by her husband as party plaintiff, he claiming $169.30 as the amount of hospital and medical hills made necessary by the injuries sustained by Mrs. Hingle.
The defendants are the Sewerage and Water Board of New Orleans, a corporation organized under Act No. 6 of the Extra Session of 1899, LSA-RS 33:4071 et seq., and Texas Bithulithie Company, a corporation organized under the laws of the State of Texas.
It is alleged by plaintiffs that the fall of Mrs. Hingle resulted from negligence of both of said corporations, and solidary judgment is prayed for against both. Mrs. Hingle prays for $2,000.00 and Mr. Hingle, as head and master of the community, prays for $169.30 as already stated.
It is alleged that, at some time prior to the night on which the accident occurred, the City of New Orleans, having decided to resurface Elysian Fields Avenue, had employed the Texas Bithulithie Company as contractor to do the said work, and that in the course of the said work it became necessary for the Sewerage and Water Board to raise a certain manhole, which was in the roadway of Elysian Fields Avenue and which was below the level at which the surface of the roadway would be after the completion of the resurfacing.
It is further alleged that, in raising the said manhole to the proper level, it was necessary for the Sewerage and Water Board to excavate around it a sufficient *479 'distance and for a sufficient depth to enable the laborers to raise the metal portion of the manhole above its foundation, and that this had been done and a depression or hole had been left entirely around the manhole, and that the manhole itself extended above the bottom of this depression to an extent which would have made it even with the level of the street after the filling in of the depression and the placing of the one inch asphalt topping on the entire street.
It is charged too that this depression and this exposed manhole were left without barricades, and that, as Mrs. Hingle was crossing the avenue on the riverside pedestrian crossing at Royal Street, “she stepped into the hole and depression thus made as aforesaid, and stumbled over the protruding manhole cover * *
After the filing of certain exceptions, which were overruled, both defendants filed answers.
The Texas Bithulithic Company answered, admitting that it was engaged in the resurfacing of Elysian Fields Avenue under contract with the City of New Orleans, but averring that, at the time at ■which this accident occurred, it was not working within two 'blocks of the scene of the accident, and averring also that it had nothing whatever to do with the raising of the level of the manhole. It denied that it was customary for barricades to 'be placed around such manholes, and averred that if any barricades were placed around any such manhole, they were placed by the Sewerage and Water Board of New Orleans, or by some other department of the City, and that the Texas Bithulithic Company was under no duty or obligation to place any such protection. In the alternative that it should appear that the said Texas Bithulithic ’Company was in any way negligent, then it pleaded contributory negligence on the part of Mrs. Hingle in “failing to observe the raised manhole and in walking in such a careless and negligent manner as to trip and fall over said manhole.”
The Sewerage and Water Board answered, averring that on February 18th, 1949, it had received a request from the Texas Bithulithic Company, contractor, to raise the manhole in question so that, after the asphalt topping should be put on the street, the level of the manhole would be even with the topping and that it had done so, raising it to a level of one inch above the concrete which had already been laid on the street and around the manhole. The Sewerage and Water Board averred that, in raising the said manhole, it had been necessary to remove the concrete around it, but that after the manhole had been placed in proper position so that its top would be even with the finished surface of the street, it had replaced the concrete around the manhole so that the manhole was left extending exactly one inch above the level surface of the concrete, which itself was level or even with the remaining portion of the street.
The Sewerage and Water Board averred that, upon completion, the work was accepted by the Texas Bithulithic Company, and that the Sewerage and Water Board had no further connection with the said manhole which had been raised in accordance with the instructions of the Texas Bithulithic Company.
In the alternative, the Sewerage and Water Board then alleged that the cause of the accident was the contributory negligence of Mrs. Hingle in that she failed “to exercise reasonable and prudent care in crossing said street; that said manhole protruded one inch (1"), which is not negligence per se; that said manhole was located at the intersection of Elysian Fields Avenue and Royal Street where public street lights are located and were in operation at the time of this accident; that plaintiff knew, or she should have known, that said street was undergoing repairs; that, under the circumstances, she was placed on guard to watch for obstructions in the street; that plaintiff failed to exercise that degree of care that the conditions and circumstances existing at that time and place required.”
After a trial on the merits, there was-judgment in favor of both defendants, and' plaintiffs have appealed.
In this court the Texas Bithulithic Company filed a brief which contained the following statement: “ * * * The evi *480 dence showed conclusively that Texas Bithulithic Company had nothing whatever to do with the alleged negligent raising of the manhole and, consequently, has no real interest in this appeal. J. L. Warren Woodville, Esq., attorney for appellants, has authorized us to state to the Court that he recognizes that there is no liability on the part of the Texas Bithulithic Company and is not pressing this appeal as against them.”
When the case was called for trial in this Court, counsel for plaintiffs was interrogated and stated that he had authorized counsel for the Texas Bithulithic Company to make the above quoted statement.
The record shows that the City of New Orleans contracted with the Texas Bithu-lithic Company for the resurfacing of the street, and that it became necessary that this manhole, with many others, be raised to a level of one inch above the concrete subsurface so that when the asphalt topping of one inch should be put on top of the concrete, these manholes would be flush with the top of the asphalt. It also appears that when the Sewerage and Water Board was called upon by the contractor to raise this manhole, it proceeded to do so by first breaking away the surrounding concrete for a distance of a foot or so from the manhole, so that the manhole itself could be raised above the foundation on which it was supported. The manhole was then raised and the hole which had 'been made around it was, on the next day, filled with concrete which was practically level with the surface of the surrounding street.
In spite of the efforts of plaintiffs to show that a depression was left and that the manhole extended above the level of this depression, the record convinces us that if there was any such depression, it was so slight as to be of no importance whatever. It does appear clearly, however, that the manhole was left to extend one inch above what was then the surface of the street and that this was done so that the asphalt topping when placed would make the surface level with the top of the manhole.
When this work was completed a barricade was placed around it by the Sewerage and Water Board so that the fresh concrete might harden. The barricade was then removed. It is not clear whether it was removed by the Sewerage and Water Board or by the City itself, but it does appear that it was removed because the City authorities desired that the street be made useable to traffic in the interim between the completion of the concrete subsurface and the laying of the asphalt topping.
It is shown that streets, which were being resurfaced were thrown open to traffic as soon as the concrete subsurface was completed, and traffic was not required to wait until the asphalt was laid. This, of course, resulted in there being these manholes elevated one inch above the level of the surface of the street.
Counsel for the Sewerage and Water Board argues orally and in his brief that “there was no negligence per se in permitting a manhole to protrude one (1") inch above the surface of the street.” And he argues, too, that if it 'be held that to leave such manhole is negligence, then the cause of the fall of Mrs. Hingle was not the fact that there was a protrusion in the street but was the contributory negligence of Mrs. Hingle herself in failing to exercise reasonable care in crossing the street. Counsel also argues that if it was negligence to leave such a protruding manhole unguarded, such negligence cannot be charged to the Sewerage and Water Board but should more properly be charged to the City itself, since the Sewerage and Water Board completed the only job it was required to perform in raising the manhole, paving around it and placing proper barricades around its work, and that when it, the Sewerage and Water Board, then delivered the work there was nothing more that it could do. Counsel says that the only thing which remained to be done to make the surface of the street perfectly even was for the paving contractor to place the asphalt topping over the concrete, and that if the City, without waiting for this topping to. be placed, decided that the barricade should be removed and the street thrown open to traffic, the fault, if there was fault, could not-be charged to the Sewerage and Water Board.
This last argument is a most interesting one, and we are also impressed by the argu *481 ment that such an impediment or protrusion as existed here is not so dangerous as to justify the conclusion that its mere presence is negligence per se.
Unfortunately, the decisions of our courts on the question of what constitutes a dangerous condition in a sidewalk or in a street seem to be quite confusing and conflicting. As is pointed out in an article entitled “Local Government Responsibility in Tort in Louisiana,” Vol. Ill Louisiana Law Review, at pages 734 and 735, there are set forth two groups of cases in one of which the author places those in which the defect is such as to be classified as unduly dangerous, and in the other of which group the author has placed a great many other cases in which the particular defect has been classified as not dangerous.
We have not found it necessary to go more fully into the question of whether the particular object which is complained of in this case should be placed in the one group or in the other because we believe that even if it should properly be said that a protrusion of one inch above the surface of the street created a danger such as might be calculated to cause injury, the fall of Mrs. Hingle was caused by her own failure to exercise care in crossing the street.
She says that there was not enough light for her to see the manhole, but we are convinced that she could easily have seen it had she looked. In fact, she says that she was so concerned about the possibility of approaching traffic which might come from two directions that she did not look for any obstruction in the street. As a matter of fact, the record shows that no traffic was approaching from either direction, and she could easily have glanced at the pavement ahead of her as she walked. Had she done so she would have seen the obstruction.
Mr. H. M. Donaghue, a witness produced by plaintiffs, said: “ * * * It wasn’t daylight, but it was light enough to see it. * * * ” And he also said that there was an overhead street light across Royal Street about thirty feet away.
On this point the judge a quo, in his reasons for judgment, said: “There was a light at the intersection and any person walking in the street could see the condition of the street and the protruding manholes upon simple observation.”
Mrs. Hingle was thoroughly familiar with the fact that the street was being paved. She lived only about one-half block away and said that almost every day she passed that particular spot. She said that the street had been undergoing repairs for “about one or two weeks”; and she added:
“ * * * I knew they were repairing the street.
******
“ * * * j believe they were black surfacing it and they raised the manhole and around it they had pavement broken off which was like a hole and the manhole was above it.”
She was asked if she had seen all this work going on, and she answered, “Yes, sir”.
Obviously she was familiar with the location of the manhole, for she said: “ * * I didn’t think I was that close to the manhole, then I tripped.”
In his reasons for judgment the Judge a quo said:
“While one walking on the street, or sidewalk, is entitled to assume its safeness, one must use ordinary care and observation, particularly when apprised of work being done in the locality. The plaintiff had no more right to concentrate her attention on approaching traffic, which she observed was not coming, than she had the right to concentrate her attention on the street and ignore the possibility of the approach of traffic. It was as much plaintiff’s duty to observe the condition of the street as it was to observe approaching traffic.
“Barnes v. City of New Orleans, 4 La.App. 503; Moise v. New Orleans Public Service, 19 La.App. 703, 140 So. 505; Kuntz v. City of New Orleans, La.App., 10 So.2d 658.
“Because of her experience in crossing the street daily for two weeks before her fall; her general knowledge of the surrounding conditions; and her failure to observe their condition just before her fall, made her guilty of contributory negligence, even if the defendants had been guilty of primary negligence.”
*482 In Bodenheimer v. City of New Orleans, La.App., 18 So.2d 224, 227, this court discussed the question of whether a pedestrian may assume that a sidewalk or a street is safe for passage and after saying that in certain situations such an assumption would be justified, we added: “* * * But, in cases where the pedestrian concedes that he knew that the walk was in bad condition, the reason for the doctrine disappears. In such instances, the care required of him must he commensurate with his knowledge • — and it seems manifest that he cannot excuse his failure to avoid an open danger by asserting that he was entitled to assume that the path was safe for travel. This principle is firmly established in our jurisprudence. See Barnes v. City of New Orleans, 4 La.App. 503; Moise v. N.O. Public Service, 19 La.App. 703, 140 So. 505, and Kuntz v. City of New Orleans, La.App., 10 So.2d 658.”
It is our conclusion that even if it be conceded that it was negligence to leave a manhole with its top protruding one inch above the surface of the street, the proximate cause of the accident in this case was the contributory negligence of Mrs. Hingle.
Consequently, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.